327 F.2d 611
 Charles REED, Plaintiff, The Travelers Insurance Company, Party Plaintiff,
v.
John C. LONG, Marshall Long and Robert W. Long, individually and a co-partnership, d/b/a Long Construction Company, Defendants and Third Party Plaintiffs-Appellees.
JOHNS-MANVILLE SALES CORPORATION, Third Party Defendant-Appellant.
 No. 15167.
 United States Court of Appeals Sixth Circuit.
 February 13, 1964.
 
 1
 Leroy G. Vandeveer, Detroit, Mich., for appellant, Vandeveer, Haggerty, Doelle, Garzia, Tonkin & Kerr, Detroit, Mich., on the brief.
 
 
 2
 John Feikens, Detroit, Mich., for appellees, Feikens, Dice, Sweeney & Sullivan, Detroit, Mich., on the brief.
 
 
 3
 Before WEICK, Chief Judge, PHILLIPS, Circuit Judge, and DARR, Senior District Judge.
 
 
 4
 DARR, Senior District Judge.
 
 
 5
 In the year 1956, John C. Long, Marshall Long and Robert W. Long, co-partners doing business as Long Construction Company [Long], contracted to erect an automotive plant for Ford Motor Company [Ford] at Wixom, Michigan.
 
 
 6
 On July 18, 1956, Long entered into a subcontract with Johns-Manville Sales Corporation [Johns-Manville], whereby Johns-Manville contracted to furnish the material and labor for that portion of the construction involved in the placement of acoustical ceiling.
 
 
 7
 On January 8, 1957, Charles Reed, while working for Johns-Manville, was injured in a fall on the hoist on which he had been carrying acoustical tile from the ground to the third floor of the building. Reed instituted suit against Long in a state court in Michigan alleging that he was injured by reason of the negligence of Long. The case was removed to the United States District Court for the Eastern District of Michigan. Thereafter Long instituted a third-party action against Johns-Manville.
 
 
 8
 The third-party complaint, among other things, alleged that the subcontract by its terms incorporated therein by reference a provision of the contract between Long and Ford, the result of which required Johns-Manville to indemnify Long for any damage claimed by reason of Reed's injuries, even though such injuries were caused by Long's own negligence. Travelers Insurance Company [Travelers], who carried Johns-Manville's workmen's compensation insurance, was added as a party-plaintiff. Thereafter all parties, including Johns-Manville, agreed that Reed was entitled to recover $30,000 for his injuries, $5,000 was to be paid to Travelers to reimburse it for money paid out to Reed under the Workmen's Compensation Law. A judgment was entered accordingly.
 
 
 9
 The controversy narrows down to the question of whether Section 30 in the contract between Long and Ford was incorporated into the subcontract between Long and Johns-Manville. It reads as follows:
 
 
 10
 "The Contractor shall be exclusively responsible for and shall bear all loss and/or expense and/or damage and/or claims therefor against the Contractor and/or the Owner, resulting from bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person or persons, and/or on account of damage to or destruction of property, including loss of use thereof (except as otherwise specifically provided in the section hereof entitled `Owner's and Contractor's Responsibilities — Fire and Certain Other Risks'), arising out of, or in connection with the performance of all work called for by this Contract, including all work assigned to the Contractor thereunder, based upon the alleged negligence of: (a) the Contractor or any of its employees, agents or servants; (b) any subcontractor or any of such Subcontractor's employees, agents or servants; (c) and/or the Owner or any employees, agents, or servants of the Owner."
 
 
 11
 The provisions of the subcontract providing for inclusions by reference, in accord with the General Conditions of the contract between Long and Ford, are as follows:
 
 
 12
 "SECTION 1. The Subcontractor agrees to furnish all material and perform all work as described in Section 2 hereof for SUPERSTRUCTURE, Divisional and Plant Office Building, Lincoln Division, Ford Motor Company at Novi, Michigan, Ford Motor Company Project 4387 for Ford Motor Company, hereinafter called the Owner, at Dearborn, Michigan, in accordance with the General Conditions of the Contract between the Owner and the Contractor, and in accordance with the Drawings and Specifications prepared by Smith, Hinchman & Grylls, Inc., hereinafter called the Architect, all of which General Conditions, Drawings and Specifications signed by the parties thereto or identified by the Architect, form a part of a Contract between the Contractor and the Owner and hereby become a part of this Contract.
 
 
 13
 "SECTION 5. The Contractor and Subcontractor agree to be bound by the terms of the General Conditions, Drawings and Specifications as far as applicable to this subcontract, and also by the following provisions:
 
 
 14
 "The Subcontractor agrees:
 
 
 15
 "(a) To be bound to the Contractor by the terms of the General Conditions, Drawings and Specifications, and to assume toward him all the obligations and responsibilities that he, by those documents, assumes toward the Owner."
 
 
 16
 The appellee Long, as third-party plaintiff, interposed a motion for summary judgment as did appellant Johns-Manville.
 
 
 17
 The District Court's decision was made upon interpretation of the subcontract, particularly the inclusion therein by reference to the prime contract. The District Judge was of the opinion that Section 5(a) of the subcontract clearly included in the subcontract by reference the obligations and responsibilities provided by Section 30 of the prime contract whereby Johns-Manville was bound to indemnify Long in the same manner as Long agreed to indemnify Ford. Upon this premise he sustained the motion for summary judgment made by Long and a money judgment for $30,000 over against Johns-Manville. The motion for summary judgment made by Johns-Manville was denied. From these judgments Johns-Manville appealed.
 
 
 18
 To determine the meaning of the subcontract in connection with its references to the prime contract presents a question of law to this Court, as well as it did to the District Court.
 
 
 19
 The parties agreed that it is within the law that there may be incorporated by reference into one contract portions of another contract provided such incorporations are in clear terms.
 
 
 20
 Section 1 of the subcontract is a declaration of the agreement and intention of the parties, clearly disclosing the understanding of the parties in including by reference into the subcontract the General Conditions of the prime contract. Leaving out the unnecessary words, Section 1 of the subcontract reads:
 
 
 21
 "SECTION 1. The Subcontractor agrees to furnish all material and perform all work as described in Section 2 * * * in accordance with the General Conditions of the Contract between the Owner and the Contractor, and in accordance with the Drawings and Specifications * * * all of which General Conditions, Drawings and Specifications signed by the parties * * * form a part of a Contract between the Contractor and the Owner and hereby become a part of this Contract."
 
 
 22
 The language used is clear and unambiguous. The clear meaning is that the reference to the inclusion in the subcontract of the General Conditions means the General Conditions pertaining to the furnishing of material and performing work in the placement of the acoustical tile and no more. This specific declaration of the intention of the parties would necessarily be the pattern for the meaning of any other reference to the inclusion in the subcontract of the General Conditions of the prime contract.
 
 
 23
 It seems to us that the provisions in Section 1 of the subcontract are sufficient to establish that the intention of the parties in including therein by reference the General Conditions contained in the prime contract was to limit the General Conditions to those concerning the furnishing of material and the performance of all the work, thereby excluding Section 30 of the General Conditions.
 
 
 24
 However, we will consider the entire subcontract and see whether it is inconsistent with the views just above expressed.
 
 
 25
 No authorities are necessary to establish the well known rule that an entire contract should be looked to in undertaking to interpret or construe a portion thereof. The whole contract may be considered as reflecting the general intention of the parties which may give light upon the particular part of the contract that is in controversy.
 
 
 26
 It appears three times in the subcontract that the subcontractor is bound by the terms of the General Conditions, Drawings and Specifications of the prime contract. These references are found at Section 1, above discussed, and in the first paragraph of Section 5 and Section 5(a). The references to General Conditions are contained in the agreement between Long and Ford and refer to a document entitled "General Conditions for Lump Sum Construction Contracts," constituting a portion of the prime contract made between Long and Ford.
 
 
 27
 There are fifty-six General Conditions in the prime contract identified by figures and under a number of these figures there are General Conditions identified by letters of the alphabet. All these General Conditions apply to the construction of the entire building. The subcontract let to Johns-Manville was only for the placing of acoustical ceiling. It is clear from the face of the instruments that the inclusions in the subcontract of the General Conditions were only those General Conditions applicable to the subcontract.
 
 
 28
 In a review of the subcontract, it is found that several items or provisions are included in the subcontract by specific reference to the items or provisions as contained in the General Conditions, Drawings and Specifications of the prime contract. Despite the fact that the broad inclusions in the subcontract of the Drawings and Specifications as contained in the contract between Long and Ford, the subcontract identifies the Drawings and Specifications to be used in the subcontract. These references will be found at Section 2, Article A, (1) (a) and (1) (b) and (2) and Section 2, Article B(4) particularly under Section 2 Article A (2) "Drawings," which describes the specific drawings for the acoustical work and the next following paragraph which describes the exact specifications to be used in the acoustical work. Under Section 5(m) (n) (o) a reference is made to the General Conditions of the prime contract concerning arbitration of disputes.
 
 
 29
 Several provisions are also included in the subcontract which are the same as in the General Conditions of the prime contract.
 
 
 30
 Some of these are a requirement to procure employer's liability and workmen's compensation insurance, public liability insurance and automobile liability insurance, all in the same amounts as are in the General Conditions. Section 3, Article A of the subcontract. At Section 3, Article B(a) (b) taxes are required to be paid as is the case in the General Conditions requiring Long to pay taxes. At Article C, entitled "Cleaning of Premises" the subcontractor is required to keep the premises clean where his work is done and leave the entire premises "broom clean" of any rubbish or debris, etc. General Conditions require Long to do the same thing as one of his obligations to Ford.
 
 
 31
 It is important to notice that the provisions duplicated concern requirements other than those applicable to the performance of the work.
 
 
 32
 It is quite significant that specific reference was made as to all Drawings and Specifications to be used in placing the acoustical ceiling and specific designation made to General Conditions concerning arbitration. Why put in these itemized Drawings and Specifications, if it were intended for the subcontract to include all General Conditions?
 
 
 33
 There is one other provision in the subcontract that is quite helpful in determining the intention of the parties. The subcontract itself contains an indemnifying provision at Section 5(f), which is as follows:
 
 
 34
 "To indemnify and save harmless the Contractor against any loss or damage to property suffered by anyone through any act or omission on the part of the Subcontractor or anyone directly or indirectly employed by him."
 
 
 35
 Why would this provision for indemnification be placed in the subcontract if it were intended that the broad reference to the General Conditions would include Section 30 [a very broad and inclusive provision for indemnification], particularly since the provision at Section 5(f) of the subcontract contains one of the items of indemnification found in Section 30 of the General Conditions?
 
 
 36
 We would call attention to Section 5(a) of the subcontract hereinabove quoted, upon which the District Judge seemed to rely for his decision, and point out that the words "obligations and responsibilities" do not add to the strength of this provision. This statement is validated by the fact that this subsection 5(a) itself provides that the "obligations and responsibilities" are provided "by those documents," meaning the General Conditions, Drawings and Specifications. Therefore, the provisions of the first paragraph of Sections 5 and 5(a) are the same. Evidently Section 5(a) was added for clarity or repeated as being a part of the provisions to which "The Subcontractor agrees."
 
 
 37
 In considering the entire contract as shedding light upon the close association of the words "General Conditions" with the words "Drawings and Specifications" as appear in the first paragraph of Section 5 and Section 5(a), we are inclined to believe that the maxim noscitur a sociis would apply, resulting in the intention of the meaning of General Conditions to be the same as the words "Drawings and Specifications." 66 C.J.S., pages 607-608 and many cases cited therein. Certainly Drawings and Specifications are limited to the method of performing the work and under the maxim noscitur a sociis the words "General Conditions" would be restricted to the same meaning.
 
 
 38
 We conclude that all the portions of the General Conditions, Drawings and Specifications of the prime contract intended by the parties to be included in the subcontract are actually written into the subcontract or are included by reference to certain itemized provisions of the prime contract, except directions for the buying of the material and performance of the work. This view definitely excludes inclusion of Section 30 of the General Conditions as being part of the subcontract. Fanderlik-Locke Co. v. United States, 285 F.2d 939 (1960), cert. denied 365 U.S. 860, 81 S.Ct. 826, 5 L.Ed.2d 823; Alexander v. Fidelity & Casualty Co., 232 Miss. 629, 100 So.2d 347 (1958).
 
 
 39
 For the reasons stated, the judgments of the District Court are reversed with instructions that Long's motion for summary judgment be denied, that the judgment based thereon be vacated and that the motion for summary judgment made by Johns-Manville be granted and a judgment entered in its favor.