■ J & J STRUCTURES, INC., Appellant, v CALLANAN INDUSTRIES, INC., et al., Respondents. [626 NYS2d 891] —Cardona, P. J. Appeal from a judgment of the Supreme Court (Conway, J.), entered November 18, 1993 in Albany County, upon a decision of the court in favor of defendants.

Defendant Callanan Industries, Inc. (hereinafter defendant) was awarded a contract by the State Thruway Authority to perform improvements of a part of the Thruway known as the Berkshire Spur. On March 16, 1991, defendant entered into a subcontract with plaintiff, by which the latter was to perform certain of the repair work on the project. The subcontract price was $53,600. According to plaintiff it duly performed all of its obligations under the subcontract, but despite due demand, the sum of $33,593 was still owing on the subcontract price. Plaintiff subsequently brought this action to recover the

balance due on the subcontract. Defendant interposed an answer and also brought a separate action against plaintiff for damages it allegedly suffered by reason of deficiencies in plaintiff's performance of the subcontract work. The two actions were consolidated and defendant's complaint was deemed to be its answer and counterclaim. At the trial, after both sides rested, Supreme Court dismissed plaintiff's complaint in its entirety and awarded defendant the sum of $59,258.40 on its counterclaim, less $20,053 in credits to plaintiff, for a final award to defendant of $39,205.40 plus interest. Plaintiff has appealed.

Based upon our review of the record, we agree with Supreme Court that plaintiff breached the subcontract. Although this Court in a nonjury trial is not limited to determining whether the findings of the trial court are supported by the weight of the credible evidence, deference will still be given to the trial court's assessment of credibility issues (see, Niles v State of New York, 201 AD2d 774).

At issue in this case is the section of the subcontract listed as "Item No. 589.52" which calls for the "Removal of Existing Steel". According to defendant this included the removal of certain "horizontal stiffeners". The subcontract also stated that plaintiff would perform the work "in accordance with the terms and provisions of the [primary] contract * * * including all * * * [d]rawings * * * and other documents forming or by reference made part of the [primary] contract". The primary contract called for the removal of "existing steel" and the diagrams which were part of the primary contract, specifically sheet No. 40, called for the removal of "horizontal stiffener * * * item 589.52". In a letter dated July 24, 1991, plaintiff's president conceded that sheet No. 40 called for the removal of a horizontal stiffener but that it was "to small to be mentioned in the work to be done". In addition, in his trial testimony, plaintiff's president acknowledged that he had sheet No. 40 prior to entering into the subcontract, that he had reviewed the primary contract and that he knew that its documents called for the removal of horizontal stiffeners. The resident engineer on the project also testified that, upon reviewing the contract documents, the primary contract did require the removal of the horizontal stiffeners.

As a general rule, the signer of a written agreement is deemed to be conclusively bound by its terms (see, South St. Ltd. Partnership v Jade Sea Rest., 187 AD2d 396, lv denied 81 NY2d 705; Mattera v Mattera, 125 AD2d 555). While this rule has no application where there is a showing of fraud, duress

or some other wrongful act on the part of any party to the contract *(see, Mattera v Mattera, supra,* at 557), no such showing was made in this case. Plaintiff's president was an experienced contractor and had been engaged in the primary contracting business since 1976. The record here clearly establishes that plaintiff knew, or had the ability to discover prior to signing the subcontract, that removal of the horizontal stiffeners was required by the terms of the primary contract and the subcontract *(see generally, Marine Midland Bank v Palm Beach Moorings,* 61 AD2d 927, *lv denied* 44 NY2d 644). Thus, since the trial evidence revealed that plaintiff was aware of the requirement that the horizontal stiffeners be removed but that it did not remove them, we cannot say that Supreme Court erred in concluding that plaintiff was guilty of a breach of contract.

Turning to the issue of damages, while plaintiff does not dispute Supreme Court's actual numerical calculations, it does contend that the court erred in not taking into account the fact that defendant was paid by the Thruway Authority on the entire primary contract, which included the removal of the horizontal stiffeners. In our view, however, the court was correct in ruling that this question was not germane to the amount of damages sustained by defendant due to the breach of the subcontract. Defendant was entitled to recover expenditures occasioned and made necessary by the breach *(see, City of Elmira v Larry Walter, Inc.,* 150 AD2d 129, *affd* 76 NY2d 912). That is, it could recover the value of the work it was required to perform due to plaintiff's unsatisfactory performance *(cf., Sturdy Concrete Corp. v NAB Constr. Corp.,* 65 AD2d 262, *appeal dismissed* 46 NY2d 938). In addition, we note that this Court "will only interfere with the trial court's measure of damages if the judgment is 'clearly excessive' " *(Dean v Long,* 127 AD2d 899, 901, quoting *Moffatt v Arlen Realty Mgt.,* 109 AD2d 934, 935). Here, adequate proof was presented as to how defendant calculated the amount it cost to have the work completed and we conclude that the award was not clearly excessive.

As a final matter, we note that we have considered the parties' remaining arguments and have rejected them as lacking in merit.

Mercure, White, Casey and Spain, JJ., concur. Ordered that the judgment is affirmed, with costs.