**OCEAN SPRAY CRANBERRIES, INC.**

v.

**REFRIGERATED FOOD DISTRIBUTORS, INC.**

v.

**Thermal C/M Services, Inc., Refrigeration Design & Services, Inc., Webber/Smith Associates, Inc., York International Corporation, York Refrigeration Group, Frigid Coil/ Frick, Inc., ADT Security Services, Inc., and Robinson Alarm Company**

**Appeal of: Refrigeration Design & Services, Inc.**

Superior Court of Pennsylvania.

Argued Oct. 17, 2006.

Filed Oct. 15, 2007.

Reargument Denied Dec. 13, 2007.

H. David Kraut, Blue Bell and Thomas E. Tyler, Philadelphia, for Refrigeration Design, appellant.

Robert G. Devine, Philadelphia, for York, appellee.

Christopher L. Troy and Michael J. Alivernini, Conshohocken, for Ocean Spray, appellee.

BEFORE: STEVENS, PANELLA, and JOHNSON, JJ.

OPINION BY PANELLA, J.:

¶ 1 Appellant, Refrigeration Design & Service, Inc. ("RDS"), appeals from the order entered on November 22, 2005, by Court of Common Pleas of Philadelphia County. After careful review, we are constrained to reverse.

¶ 2 This case arises from an ammonia leak in a warehouse on October 8, 2000. Refrigerated Food Distributors, Inc. ("RFDI"), the owner of the warehouse, had contracted with Thermal C/M to construct an addition to its existing facility on site. Pursuant to this contract, Thermal C/M contracted with RDS to provide, *inter alia*, refrigeration equipment for the addition. At all times relevant to this case, RDS was subject to a contractual agreement with Appellee, York Refrigeration Group and its subsidiaries (collectively "York"). Pursuant to this agreement, known as the "Factor Agreement", RDS was obligated to promote and sell York products.

¶ 3 RDS therefore installed certain freezer equipment, manufactured by York, in RFDI's warehouse. The installed equipment included an overhead air handling unit, which utilized a fan to circulate air. At some time on October 8, 2000, the fan broke free of its restraints, fell forward into the freezer unit, and severed an ammonia pipe line. Over 10,000 pounds of liquid ammonia escaped from the severed line, leaking into the facility and spoiling the food products stored there, including, *inter alia*, cranberries owned by Appellee, Ocean Spray Cranberries, Inc. ("Ocean Spray").

¶ 4 Nine claims for property damage were filed by diverse plaintiffs which were all eventually consolidated into the present action. In its consolidated form, the case pitted owners of damaged property against RDS and York, among others. Most parties reached settlements prior to trial, including RDS, which entered into joint tortfeasor settlements with all plaintiffs in November 2003. In particular, RDS and Ocean Spray, through their settlement agreement, created a "Reserve Fund" that was held in escrow to pay for any possible indemnification liability owed by RDS to York.

¶ 5 In November 2004, RFDI and Ocean Spray proceeded to trial with their claims against York and several other defendants not participating in this appeal. This trial was bifurcated into three stages: liability, warranty breach, and damages. At the conclusion of the liability phase of the trial, on November 24, 2004, a jury returned a verdict assigning 75% responsibility for the leak to York, 24.995% responsibility to RDS, and the remainder to additional defendant Carr and Duff, Inc. After the jury rendered its verdict, York filed a motion for partial summary judgment for indemnity and defense costs against RDS. By order entered June 21, 2005, the trial court granted York's motion and directed York to submit attorneys' affidavit of fees and costs in order to determine the amount owed by RDS.

¶ 6 Contemporaneously, Ocean Spray requested the trial court to order the release of the "Reserve Fund". By a separate order dated June 21, 2005, the trial court granted Ocean Spray's request. Subsequent trial court orders resolved most of the remaining outstanding claims involved in the case, and on November 22, 2005, the

last remaining claim was settled.[1] This timely appeal followed.

¶ 7 On appeal, RDS raises the following issues for our review:

1. Did the Trial Court err in holding that RD & S owed indemnification to York under Paragraph EIGHTH (D) of the Factor Agreement between the parties, for York's own product defect?

. . .

2. Did the Trial Court err in finding that the indemnification obligation owed by RD & S to York was triggered by a breach by RD & S of any of its obligations under the Factor Agreement?

. . .

3. Did the Trial Court err in ordering RD & S to release $97,782 from the Reserve Fund created pursuant to the Settlement Agreement and Joint Tortfeasor Release between RD & S and the RFDI tenant-plaintiffs, including appellee Ocean Spray Cranberries, Inc., because the conditions specified for the release of the Reserve had not been satisfied?

Appellant's Brief, at 7.

¶ 8 In its first issue on appeal, RDS contends that the trial court erred in concluding that the indemnification clause contained in the Factor Agreement obligated RDS to assume York's liability for York's own acts of negligence. The indemnification clause, numbered "EIGHTH (D)", reads as follows:

[RDS] assumes and agrees to indemnify, defend and hold [York] harmless from and against any and all liability and obligation (including reasonable attorney's fees and other cost and expense of litigation) with respect to claim for bodily injury, or death, or property loss or damage by whomsoever such claims may be asserted which are based in whole or in part upon any act or omission on the part of [RDS], or any of its agents, servants, or employees in connection with the performance of any obligation of [RDS] under this Agreement.

Factor Agreement, at 5.

¶ 9 RDS argues that the legal effect of this clause is controlled by what it calls the "Perry/Ruzzi rule". In Ruzzi, our Supreme Court held that

[t]he law has been well settled in this Commonwealth for 87 years that if parties intend to include within the scope of their indemnity agreement a provision that covers losses due to the indemnitee's own negligence, they must do so in clear and unequivocal language. No inference from words of general import can establish such indemnification.

Ruzzi v. Butler Petroleum Co., 527 Pa. 1, 7, 588 A.2d 1, 4 (1991). The contractual clause at issue in Ruzzi obligated the indemnitors to indemnify the indemnitee, Butler Petroleum, "from any and all liability for claims for loss, damage, injury or other casualty to persons or property." Id., 527 Pa. at 5, 588 A.2d at 3. In reviewing this language, the Supreme Court assumed that the parties to the contract were aware that Pennsylvania law would not construe the indemnity clause so as to cover negligent acts of Butler Petroleum

---

1. Judgment had, in fact, been entered on all claims relevant to this appeal by orders dated October 26, 2005 and November 2, 2005. However, these judgments did not become appealable until all claims of all parties had been resolved. See Pa. R.A.P., Rule 341(b), 42 PA. CONS.STAT. ANN.; Prelude Inc. v. Jorcyk, 695 A.2d 422 (Pa.Super.1997) (en banc). There was no trial between York and RDS regarding indemnification.

itself, unless an express stipulation concerning Butler's negligence were included in the document. *Id.*, 527 Pa. at 9, 588 A.2d at 5. As such, the *Ruzzi* Court concluded that "the only intent that can be gleaned from this document is that the parties did not intend to indemnify for acts of the indemnitee's negligence, since words of general import are used." *Id.*

¶ 10 In this regard, the *Ruzzi* Court reaffirmed the earlier decision of the Supreme Court in *Perry v. Payne*, 217 Pa. 252, 66 A. 553 (1907). In *Perry*, George F. Payne & Co., the defendants therein, agreed to erect for Edward Perry, the owner of the premises, a building at the southeast corner of Sixteenth and Chestnut Streets in Philadelphia. Payne provided to Perry a bond of indemnity providing that Payne would

> protect and keep harmless the owners of and from all loss ... from damages arising from accidents to persons employed in the construction of or passing near said work, or for damages done to adjacent properties by reason of the construction of said work, or by depositing material in such a manner as to damage either the city or the individual.

*Id.*, 217 Pa. at 254, 66 A. at 553. After Perry had obtained exclusive possession of the building, specifically an elevator shaft, a painter employed by a subcontractor was killed due to the actions of one of Perry's employees. Although Perry brought an action against Payne on the indemnity agreement, the Supreme Court held that

> a contract of indemnity against personal injuries, should not be construed to indemnify against the negligence of the indemnitee, *unless it is so expressed in unequivocal terms.* The liability on such indemnity is so hazardous, and the character of the indemnity so unusual and extraordinary, that there can be no presumption that the indemnitor intend-

ed to assume the responsibility *unless the contract puts it beyond doubt by express stipulation.* No inference from words of general import can establish it. *Id.*, 217 Pa. at 262, 66 A. at 557 (emphasis added). *See also Mace v. Atlantic Refining Marketing Corp.*, 567 Pa. 71, 77–78, 785 A.2d 491, 495 (Pa.2001).

¶ 11 In the matter presently before us, the trial court, in addressing this issue, concluded that the *Perry/Ruzzi* rule applied only to claims of personal injury, and not to cases that involved purely property damage claims. Trial Court Opinion, 5/18/2006, at 11. Based upon this conclusion, the trial court turned to a Pennsylvania Supreme Court decision published shortly after *Ruzzi*, i.e., *Topp Copy Products v. Singletary*, 533 Pa. 468, 626 A.2d 98 (1993).

¶ 12 In *Topp Copy*, the Supreme Court reviewed an exculpatory clause in a lease wherein the lessee discharged and released the lessor "from all liability for any and all damage" caused by plumbing malfunctions in the leased premises. *Id.*, 533 Pa. at 470, n. 1, 626 A.2d at 99, n. 1. In the litigation that followed, the trial court agreed with the lessor that the exculpatory clause was applicable and granted summary judgment in favor of the lessor. On appeal, the Superior Court reversed, because in its view, the exculpatory clause was not specific enough to immunize the lessor from liability for his own acts of negligence. In reaching this conclusion, the Superior Court relied on the Supreme Court's decision in *Ruzzi* as dispositive of the requirements of Pennsylvania law when determining the enforceability of exculpatory clauses immunizing a landlord for his own acts of negligence.

¶ 13 Following the grant of allocatur, the Supreme Court in *Topp Copy* reviewed *Ruzzi*, and noted that it involved the interpretation of an indemnity clause

in a construction contract, under the unique circumstances of a party attempting to relieve itself of responsibility for its own negligence. The Court warned that the *Ruzzi* holding was not to be construed as a rule of general applicability, and instead concluded that proper interpretation of the lease clause in *Topp Copy*, which waived the lessee's claims against the lessor, merely required that it be "plainly expressed" to satisfy "[a]ll ... the law requires in the case of a tenant's waiver of his landlord's responsibility for losses resulting from his negligence. . . ." *Id.*

¶ 14 In the present case, the trial court concluded that *Ruzzi* was inapposite. We disagree. First, we find no support for the trial court's conclusion that the *Perry/Ruzzi* rule applies only in cases involving personal injury. Neither the trial court nor Appellees cite to any language in any case that explicitly supports this reasoning; nor does there appear to be any valid policy reason for applying such a distinction in the present case. Even if we were to accept the implicit argument that typical property damage claims are less severe than personal injury claims, the present case, involving an award of over $7,000,000.00, certainly qualifies as an exception. As a result, we conclude that it was error for the trial court to distinguish *Ruzzi* on this basis.

¶ 15 In the same light, however, we note that the tension between *Topp Copy* and *Ruzzi* indicates that we must not apply *Ruzzi* mechanically to the facts in this case. We conclude that the essential distinguishing factor between *Topp Copy* and *Ruzzi* is the nature of the clause involved. In *Ruzzi*, the Court reviewed an indemnification clause and noted that "[t]he liability on such indemnity is so hazardous, and the character of the indemnity so unusual and extraordinary, that there can be no presumption" of intent to shift liability for negligent acts absent explicit wording to that effect. *Ruzzi*, 527 Pa. at 8, 588 A.2d at 4 (citation omitted). In contrast, the Court in *Topp Copy* was faced with construing an exculpatory clause in a lease agreement, and while it did not explicitly present this reasoning, the Court clearly concluded that such clauses were not as "hazardous" as indemnification clauses in construction agreements, and therefore required less precision in order for a lessor to relieve itself of liability for its own negligence.

¶ 16 When viewed in this manner, it is clear that the present case is controlled by *Ruzzi*, and not *Topp Copy*. Paragraph "EIGHTH (D)" of the Factor Agreement is an indemnification clause, not an exculpatory clause. As such, in order to be construed as shifting liability for York's negligence onto RDS, the Factor Agreement must explicitly state such an intent.[2]

¶ 17 On this issue, we find the recent opinion of the Supreme Court of Pennsylvania in *Bernotas v. Super Fresh Food Markets, Inc.*, 581 Pa. 12, 863 A.2d 478 (2004), instructive. In *Bernotas*, the Supreme Court addressed, *inter alia*, the issue of whether an indemnification clause in a construction subcontract agreement was sufficiently specific to obligate the subcontractor, Goldsmith, to assume liability for the negligence of the general contractor, Acciavatti. The plaintiff, Barbara Bernotas, at the time a patron of the Super Fresh Food Market, sustained serious injuries when she fell at a construction area inside the store. The general contractor, Acciavatti Associates, had hired

2. Our analysis of the intent of the indemnity clause also addresses the argument raised by RDS in its second issue on appeal.

subcontractor Goldsmith Associates to perform electrical work in accordance with the general contract between Acciavatti and Super Fresh's parent company. Bernotas sued Super Fresh for her injuries. The store then filed a cross-claim joining Acciavatti and Goldsmith, claiming contractual entitlement to complete indemnification. Bernotas eventually settled for $200,000, with each defendant contributing one-third of the amount. Demands for contractual indemnification then went up the line, with Super Fresh seeking indemnification from Acciavatti, and Acciavatti similarly seeking indemnification from Goldsmith.

¶ 18 A bench trial was held to determine the extent of indemnification to which Super Fresh and Acciavatti were entitled. The trial court found that both Acciavatti and Goldsmith had acted negligently in a manner that contributed to the plaintiff's injuries. Pursuant to this finding, the trial court ordered Acciavatti to indemnify Super Fresh, but did not require Goldsmith to indemnify Acciavatti.

¶ 19 The case reached the Pennsylvania Supreme Court on the issue of whether the conduit or pass-through indemnification theory, i.e., the transfer of liability from owner to general contractor to subcontractor, was consistent with the Supreme Court's prior holdings requiring negligence indemnification provisions to be expressly and unequivocally stated in a contract between two parties.

¶ 20 The language in the pertinent clause was quoted by the Supreme Court as follows:

> [Goldsmith] hereby releases [Acciavatti] and [Super Fresh] from any and all claims ... for personal injury ... arising out of any matter occurring at location of the Work ... and further, [Goldsmith] agrees to indemnify and to hold harmless [Acciavatti] and [Super Fresh] ... from and against any claim, loss, damage, liability or expense ... occurring to any property or for personal injury ... as ... may result from or arise from the performance, lack of performance or improper performance of the Work whether such matter may arise or occur on the location of the Work...

*Id.*, 581 Pa. at 16–17, 863 A.2d at 480. The Supreme Court held that this language did not "clearly express the parties' intentions regarding the issue of indemnification." *Id.*, 581 Pa. at 21, 863 A.2d at 483. The Supreme Court concluded that because the injury was not "found to have resulted solely from the performance of Goldsmith's work, the indemnification provision" was not applicable. *Id.*

¶ 21 Similarly, in the present case, the indemnification clause limits its application to "claims ... which are based in whole or in part upon any act or omission on the part of [RDS] ... in connection with the performance of any obligation of [RDS] under this Agreement." Factor Agreement, at 5. Pursuant to the Factor Agreement, RDS's obligations can be summarized as follows:

- Use best efforts to sell and promote Frick products within its territory and maintain an adequate stock of supplies to service the products.
- Use Frick forms when purchasing Frick products
- Assume risks associated with cancelled orders
- Send employees to Frick training sessions
- Provide Frick notice of any change in ownership of RDS
- Refrain from using Frick trade marks absent permission

Factor Agreement, at 2–3. The trial court inferred from the course of dealing that the Factor Agreement envisioned RDS de-

signing and installing the Frick products it sold. Trial Court Opinion, 5/18/2006, at 18. However, as the above summary indicates, design and installation was not a "clearly expressed" obligation of RDS under the Factor Agreement. Therefore, under *Bernotas* and *Perry/Ruzzi,* the Factor Agreement did not "clearly express" an intent by RDS to indemnify York for its own negligence under circumstances where RDS was found to have negligently installed a York system.

¶ 22 With the indemnity clause so construed, we turn to the verdict entered by the jury in the liability phase of the trial. As noted previously, the jury creatively apportioned 75% liability for the incident to York, 24.995% to RDS, and 0.005% to a third defendant. This apportionment of liability was predicated on the following findings. First, that the "unit manufactured by York [was] defective in that it lacked any element necessary to make it safe for its intended use from the time it left the control of York[.]" Jury Verdict Sheet, 11/24/04, at 1. Second, that "the refrigeration system product designed and supplied by RD & S [was not] defective[.]" *Id.,* at 2. Finally, the jury found that York and RDS were negligent "in their supply of services or design and delivery of refrigeration system or manufacture of product[.]" *Id.,* at 3.

¶ 23 Taken together, these jury findings can only be logically reconciled by concluding that the jury found that RDS's liability was predicated upon its negligence in installing the refrigeration equipment. While we cannot dispute the trial court's conclusion that York and RDS most likely envisioned RDS installing the products it purchased pursuant to the Factor Agreement, the fact remains that installation of the product was not an obligation of RDS under the Factor Agreement. Accordingly, we conclude that the underlying claim was not based upon any act that RDS was obligated to perform under the Factor agreement. As such, RDS was not obligated to indemnify York for York's own negligence.

¶ 24 Having concluded that we must reverse the indemnity judgment, we note that RDS concedes that its final issue on appeal is therefore moot: "This Court must address this issue only if it fails to reverse the $7.6 million indemnity judgment in favor of York." Appellant's Brief, at 36 n. 6. As a result, we need not address RDS's final issue on appeal, other than to vacate the order releasing the funds from the "Reserve Fund" and allow the trial court to proceed in the manner required by the settlement agreement.

¶ 25 Summary Judgment order reversed. Order directing release of settlement funds vacated. Case remanded for proceedings consistent with this opinion. Jurisdiction relinquished.