Barbara BERNOTAS and
Joseph Bernotas, h/w

v.

SUPER FRESH FOOD MARKETS,
INC., Appellee

v.

Goldsmith Associates, Appellee,
and Acciavatti Associates,
Appellant.

Appeal of Acciavatti Associates,
Appellant

Superior Court of Pennsylvania.

Argued May 7, 2002.

Filed Dec. 20, 2002.

Howard B. Hopson, Philadelphia, for appellant.

Jeffrey C. Scotland, Philadelphia, for Goldsmith, appellee.

Nicholas J. Sansone, Marlton, for Super Fresh Food Markets, appellee.

Before: HUDOCK, BOWES and CAVANAUGH, JJ.

BOWES, J.:

¶ 1 Appellant, Acciavatti Associates, appeals from an order of the Court of Common Pleas of Chester County dated July 18, 2001,[1] which directs Appellant to in-

---

**1.** Appellant's brief indicates that it appeals from the trial court's July 18, 2001 order as well as an earlier order entered on February 14, 2001, which granted summary judgment in favor of Super Fresh and denied Appellant's cross-motion for summary judgment. However, the February order was not a final order because it did not dispose of the cross-claims against Goldsmith. *See* Pa.R.A.P. 341. Moreover, as noted *infra*, the trial court disposed of the February 2001 order prior to

demnify Appellee, Super Fresh Food Markets, Inc. ("Super Fresh") and holds that Appellee, Goldsmith Associates ("Goldsmith") was not obligated to indemnify Appellant. We affirm in part and reverse in part.

¶ 2 The underlying action involved the following. On or about November 14, 1992, Barbara Bernotas slipped and fell at a Super Fresh supermarket in Downingtown, Pennsylvania,[2] while construction work was being performed by Appellant, the general contractor and Goldsmith, an electrical subcontractor. She alleged that her fall was caused by a "hole in the flooring and a protruding pipe" while she was distracted by a nearby merchandise display. Mrs. Bernotas filed suit against Super Fresh. Thereafter, Super Fresh filed a cross-claim joining Appellant and Goldsmith as additional defendants on the basis that contractually it was entitled to complete indemnification from those defendants. On October 16, 1998, Mrs. Bernotas settled her case for $200,000, with each defendant contributing one-third.

¶ 3 Before the remaining contribution action proceeded to trial, Appellant and Super Fresh filed cross-motions for summary judgment. On February 14, 2001, the trial court entered an order, which denied Appellant's motion for summary judgment and granted summary judgment in favor of Super Fresh on the basis that Super Fresh was entitled to indemnification pursuant to contract MV–1219 between Appellant and the Great Atlantic and Pacific Tea Co., Inc. ("A & P"), Super Fresh's parent company. Contract MV–1219 provides in pertinent part:

> **The Contractor shall assume entire responsibility and liability for any and all damage or injury of any kind or nature whatever (including death resulting therefrom) to all persons,** whether employees of the Contractor or otherwise and to all property including but not limited to property of the company of loss of use thereof, **caused by,** resulting from, arising out of, or occurring in **connection with the execution of the work provided for in this contract and/or caused or contributed to by any negligent or willful act, error, or omission on the part of the Company, the contractor or his subcontractors, or the agents, servants or employees of the company, the Contractor** or his subcontractor, including any alleged breach of any statutory duty or obligation on the part of the Company and/or its agents, servants or employees except as hereinafter provided; and if any person shall make a claim for any damage or injury (including death resulting therefrom) as hereinbefore described, and except as hereinafter provided, the Contractor agrees to indemnify and save harmless the Company, its agents, servants and employees from and against any and all loss, expense, damage or injury, that the Company, and/or its agents, servants or employees may sustain as a result of any such claim and the contractor agrees to assume, on behalf of the Company and/or its agents, servants, or employees upon such claim and to pay all costs and expenses of whatever nature resulting therefrom in connection therewith, and to pay on behalf of the Company and/or its agents, servants or employees in any such action. This agreement shall continue in

entering the July 2001 order that is the subject of this appeal.

**2.** Although the trial court opinion and Appellant's brief identify the store's location as Doylestown, Pa., the store actually is located in Downingtown.

effect notwithstanding the fact that the Company has accepted and paid for the work. **Provided, however, that this indemnification shall not apply to liability caused by or resulting from the sole negligence of the Company and/or its indemnification is prohibited by law.**

General Contract, Article XII (emphasis added).

¶ 4 Subsequently, Appellant filed a motion to reconsider, in which it alleged that a question of fact existed because under the terms of the contract, Super Fresh would not be entitled to indemnification if it were found to be solely negligent. In addition, Appellant raised the alternate argument that if it were obligated to indemnify Super Fresh, then it would be entitled to full indemnification from Goldsmith under the terms of its subcontract dated October 16, 1992 ("the subcontract"). Due to scheduling conflicts, the trial court did not address Appellant's motion for reconsideration until the matter came before it on the scheduled trial date.

¶ 5 On March 26, 2001, the trial court heard oral argument concerning Appellant's motion to reconsider and vacated its grant of summary judgment to the extent required to provide Appellant with the opportunity to present evidence that Super Fresh was solely negligent. Thereafter, a bench trial convened to determine the extent of Super Fresh's negligence and resolve whether Appellant was entitled to indemnification from Goldsmith. After the trial court presided over the bench trial, reviewed trial memoranda and the parties' proposed finding of facts and conclusions of law, it entered its July 18, 2001 decision.

¶ 6 The trial court found that Super Fresh was not solely negligent in the incident;[3] therefore, Appellant had an obligation to indemnify Super Fresh for the underlying accident pursuant to the terms of the agreement between them. In addition, the trial court found that Goldsmith was not obligated to indemnify Appellant under the terms of the subcontract.

■ ¶ 7 Appellant did not file a motion for post-trial relief. Instead, Appellant filed a motion to reconsider the July 18, 2001 court order. Apparently, the trial court treated the motion to reconsider as a motion for post-trial relief, and on August 16, 2001, it denied relief. Hence, the issues contained in Appellant's motion were preserved for review. *See Gemini Equipment Co. v. Pennsy Supply, Inc.,* 407 Pa.Super. 404, 595 A.2d 1211 (1991) (issues raised in timely petition for reconsideration are preserved for appeal under Pa. R.C.P. 227.1 where petition essentially was motion for post-trial relief that was improperly labeled).

¶ 8 Appellant raises the following arguments on appeal. First, Appellant alleges that the indemnification provision relied upon by the trial court was not part of the agreement between it and Super Fresh. Alternatively, Appellant argues that it is entitled to full indemnification from Goldsmith under the terms of its subcontract.

■ ¶ 9 As the issues before us are questions of law, our scope of review is plenary. *Harleysville Ins. Companies v. Aetna Cas. and Sur. Ins. Co.,* 568 Pa. 255, 795 A.2d 383 (2002). "Thus, we are free to draw our own inferences and reach our own conclusions." *Ratti v. Wheeling Pittsburgh Steel Corp.,* 758 A.2d 695, 702 (Pa.Super.2000). Our standard of review

---

**3.** The trial court did not make a factual determination concerning the actual cause of the injury. It merely found that both Appellee

and Goldsmith failed to provide a safe work area.

is abuse of discretion or error of law. *Andaloro v. Armstrong World Industries, Inc.,* 799 A.2d 71 (Pa.Super.2002). "If a trial court erred in its application of the law, [we] will correct the error." *Ratti, supra,* at 702 (quoting *Francis J. Bernhardt, III, P.C. v. Needleman,* 705 A.2d 875, 876–77 (Pa.Super.1997)).

¶ 10 First, Appellant contends that Super Fresh is not a party to contract MV–1219 because the parties did not assign A & P's contractual rights and duties to Super Fresh. According to this argument, absent an assignment of rights, Super Fresh is precluded from obtaining the benefits provided in contract MV–1219. We disagree.

¶ 11 Appellant's argument ignores the following facts. In 1983, Appellant and A & P signed contract MV–1219 that was designed to cover all work performed by Appellant until further notice. Thereafter, A & P formed Super Fresh; A & P is its parent company. Contract MV–1219 was never cancelled, revoked or otherwise terminated. When Super Fresh needed work to be performed, Appellant bid successfully on it. After bidding, it was necessary for Appellant to receive a purchase order, which it had to produce in order to receive payment. The purchase order contained an integration clause, which provided in relevant part that "the printed terms and conditions in Memorandum of Agreement No. MV–1219 dated 5/5/83 are made a part hereof as if set forth in length and to the extent inconsistent herewith the set terms and conditions shall apply." Therefore, the terms of contract MV–1219 were incorporated into the purchase order that the parties utilized in the construction project at the Super Fresh location. Hence, the trial court did not err in holding that the indemnification clause contained in contract MV–1219 applied between Appellant and Super Fresh.

¶ 12 Although we have consistently held that exculpatory clauses designed to indemnify a party for its own negligence are to be construed strictly, the instant provision contains the requisite degree of specificity. *See Ruzzi v. Butler Petroleum Co.,* 527 Pa. 1, 588 A.2d 1 (1991) (absent express terms to the contrary, indemnification does not require a party to assume liability for the indemnitee's own negligence); *see also Greer v. City of Philadelphia,* 568 Pa. 244, 795 A.2d 376 (2002) (same). The language of contract MV–1219 is clear; Super Fresh is indemnified for its own negligence in connection with the project unless it was solely responsible for the incident. Instantly, the trial court found that Super Fresh was not solely negligent for the incident and Appellant does not contend otherwise. Therefore, pursuant to the terms of the contract with Appellant, Super Fresh is entitled to indemnification for its settlement contribution. *See Woodburn v. Consolidation Coal Co.,* 404 Pa.Super. 359, 590 A.2d 1273 (1991) (pursuant to "sole negligence" clause, injuries caused by less than sole negligence fall within scope of indemnification); *limited in part by Leonard v. Pennsylvania Department of Transportation,* 565 Pa. 101, 107, 771 A.2d 1238, 1241 n. 2 (2001) (entity charged with indemnification must have presence or control at work site).

¶ 13 Next, Appellant argues that it is entitled to full indemnification from Goldsmith under the terms of the subcontract. Appellant contends that contract MV–1219 flows down to Goldsmith, making it responsible for the indemnification obligation therein and that paragraphs 11 and 13 of the subcontract also contain indemnification provisions which, when read *in pari materia* with contract MV–1219, extend the indemnification· obligation to Goldsmith.

¶ 14 Appellant initially posits that indemnity flows from the indemnification clause contained in contract MV–1219, which Appellant and Goldsmith incorporated into their subcontract. The incorporation provision reads as follows:

> The Contract Documents for this Subcontract (herein sometimes referred to as Agreement or as Contract) consist of this Agreement, ... the General Contract agreement (however designated) between Owner and CONTRACTOR, the Conditions of the Contract between Owner and CONTRACTOR (including all conditions whether General, Supplemental, or otherwise), the Drawings, the Specifications, all addenda issued prior to and all modifications issued after the parties to this Subcontract, all of the above being, in the aggregate, herein referred to as the "Contract Documents". **The Contract Documents form a part of this Subcontract, and are as fully a part of this Subcontract as if attached to this agreement and as if herein set forth at length.** SUBCONTRACTOR acknowledges having had a full opportunity to examine the contract documents, and of having been informed that the copies of the Contract Documents, as to those portions thereof as pertain to the work under this Subcontract, are available to the SUBCONTRACTOR upon request. (emphasis added).

Subcontract Between Contractor and Subcontractor, ¶ 1.[4]

¶ 15 This provision illustrates the parties' intention to incorporate the terms of contract MV–1219 into the subcontract. Although Goldsmith is not a signatory to MV–1219, the above provision identifies the contract between owner and contractor as a "contract document" and further states that "[t]he Contract Documents form a part of this Subcontract, and are as fully a part of this Subcontract as if attached to this agreement and as if herein set forth at length." *Id.* Although this provision lacks the express "agree to be bound" language that some incorporation clauses use to bind lower-tier contractors to the terms of the prime contract, paragraph 11 of the subcontract provides:

> Further, SUBCONTRACTOR agrees to **fully perform and to assume all obligations and liabilities of the CONTRACTOR under the General Contract for the work,** or as may be imposed by law, including but not limited to all warranties and guarantees. (emphasis added).

Subcontract between Contractor and Subcontractor, ¶ 11. We find that the instant provision has an identical effect on Goldsmith as if the "agree to be bound" language actually were employed. These two provisions make it clear that Goldsmith agreed to perform in accordance with the "Contract documents" which include the indemnification provision of contract MV–1219.

■ ¶ 16 Any other interpretation would distort the clear meaning of the

---

4. This language parallels the AIA–A401 Standard Form of Agreement Between Contractor and Subcontractor (1997 ed.), which utilizes the following incorporation provision: The Subcontract Documents consist of (1) this Agreement; (2) the Prime Contract, consisting of the Agreement between the Owner and Contractor and the other Contract Documents enumerated therein; (3) Modifications issued subsequent to the execution of the Agreement between the Owner and the Contractor, whether before or after the execution of this Agreement; (4) other documents listed in Article 16 of this agreement; and (5) Modifications to this Subcontract issued after execution of this agreement. These form the Subcontract, and are as fully a part of the Subcontract as if attached to this Agreement or repeated herein.

language used and render the provision meaningless. When the words of a contract are clear, we will not give them a meaning that conflicts with that of the language actually used. *Anchel v. Shea,* 762 A.2d 346 (Pa.Super.2000). Thus, all of the contract documents, including contract MV–1219 and the purchase order used to realize the project, were incorporated into the bargain between Appellant and Goldsmith. *Compare Potts Mfg. Co. v. Loffredo,* 235 Pa.Super. 294, 340 A.2d 468 (1975) (mere reference to prime contract's identification number in heading of subcontract and purchase order does not incorporate terms of prime contract).

¶ 17 The incorporation clause created a conduit through which the obligations embodied in the prime contract flowed from that contract to the one between Appellant and Goldsmith to the extent that the obligations were within the ambit of the subcontract. *See Roman Mosaic and Tile Co. v. Thomas P. Carney, Inc.,* 729 A.2d 73 (Pa.Super.1999) (where subcontract incorporated prime contract by reference, terms of prime contract flowed through to subcontract). The purpose of this type of contract provision, commonly referred to as a "flow-through" or "conduit" clause, is to assure that a subcontractor is bound to the prime contractor in the same manner that the prime contractor is bound to the owner. In essence, the provision requires the subcontractor to stand in the shoes of the prime contractor with regard to rights and obligations encompassed in the prime contract to the extent they arise within the purview of the subcontract.

¶ 18 There is a dearth of case law applicable to the facts before us; however, we find guidance in the case law of our sister jurisdictions. A review of these jurisdictions demonstrates that flow-through provisions are an accepted means of transferring risks. "As a matter of contract

law, incorporation by reference is generally effective to accomplish its intended purpose where, as here, the provision to which reference is made has a reasonably clear and ascertainable meaning." *Binswanger Glass Co., Inc. v. Beers Construction Co.,* 141 Ga.App. 715, 234 S.E.2d 363, (1977).

¶ 19 In *Sime Construction v. Washington Public Power Supply System,* 28 Wash.App. 10, 621 P.2d 1299 (1980), the Washington Court of Appeals applied the principles underlying incorporation by reference. The court precluded a subcontractor from seeking delay damages because it failed to raise its delay claim in a timely manner. In that case, the prime contract contained a clause requiring notice of a delay claim to be filed within fifteen days of the event that created the delay. Although the subcontract did not contain a notice clause, it incorporated the prime contract in its entirety. The subcontract provided, in pertinent part as follows.

A. Subcontract documents include all the below listed items, all of which are incorporated herein and made part hereof by reference thereto.

1. The Contract between the Owner and the Contractor... and the conditions thereof (general, supplementary and other conditions)....

*Id.* at 1302. Based on the above language, the court held that the subcontractor was bound by the notice provision. Thus, it concluded that notice of the subcontractor's claim was filed untimely beyond the fifteen day limit.

¶ 20 Similarly, in *Turner Construction Company v. Midwest Curtainwalls, Inc.,* 187 Ill.App.3d 417, 135 Ill.Dec. 14, 543 N.E.2d 249 (1989), the Illinois Appellate Court held that where the general contract contained an arbitration clause, a subcontractor had a contractual right to arbitration despite the lack of an arbitration clause in the subcontract. In reaching this

conclusion, the court focused on a section of the subcontract that provided that its terms were "intended to be and shall be in addition to and not in substitution of any of the terms and provisions of the General Contract . . . ." *Id.* at 421, 135 Ill.Dec. 14, 543 N.E.2d 249. Although the general contractor posited that the flow-through clause only applied to the "work performed" rather than the resolution of disputes, the court reasoned that the clause effectively incorporated the entire general contract into the subcontract.

¶ 21 In *J & J Structures, Inc. v. Callanan Industries, Inc.* 215 A.D.2d 890, 626 N.Y.S.2d 891 (N.Y.App.Div.1995), the New York Supreme Court Appellate Division enforced a flow-through clause, which obligated a subcontractor to perform its work in accordance to documents that were incorporated into the contract by reference. The court held that since the subcontractor had the opportunity to review the referenced documents prior to executing the subcontract, it was required to perform in accordance with the referenced documents.

¶ 22 In the case *sub judice,* contract MV–1219 obligated Appellant to indemnify Super Fresh for any damages that were not caused by Super Fresh's sole negligence. The subcontract expressly incorporated the terms of the contract documents without qualification, including contract MV–1219. Goldsmith acknowledged that it had the opportunity to review the contract documents and affirmed that the contract documents were available upon request. Thus, Goldsmith, in effect, agreed to indemnify Appellant for any damages that were not caused by Super Fresh's sole negligence that occurred within the purview of the subcontract.

¶ 23 Goldsmith argues that pursuant to *Ruzzi, supra,* it is not obligated to provide indemnification for another's negligence unless this intention was expressed un-equivocally in the subcontract. In support of this argument, Goldsmith notes that Super Fresh has never sought indemnity from it. This position ignores the flow-through language contained in paragraphs 1 and 11 of the subcontract. Under our interpretation of these provisions, Goldsmith not only assumed the same obligations as Appellant but also assumed those obligations to Appellant. The plain language of contract MV–1219, combined with the subcontract's incorporation language transferred Appellant's indemnification obligation to Goldsmith. Specifically, Goldsmith assumed Appellant's obligation to indemnify Super Fresh for injuries at the location of Goldsmith's work that do not arise from the sole negligence of Super Fresh. Since Goldsmith stands in Appellant's shoes, Goldsmith is obligated to indemnify Appellant fully.

■ ¶ 24 The contractual chain that enables an exculpatory clause to pass from owner to contractor to subcontractor serves an important function. It places the ultimate responsibility to maintain a safe environment on the party who can most effectively prevent accidents. The subcontractor is closest to the actual operation and can most effectively recognize and remove potentially dangerous conditions. In a series of cases, our Supreme Court has stated:

> Logically, safety responsibility best rests on the subcontractor doing the work, for that party is most familiar with the work and its particular hazards. How can the [owner or contractor] control the [sub]-contractor who is engaged to do the work and who presumably knows more about doing it than the man who by contract authorized him to do it? Responsibility goes with authority. Thus, a subcontractor who undertakes a task is in the best position to provide for the safe accomplishment thereof, and

delegation of safety responsibility to that subcontractor does not deviate from the contractor's duty.

*Leonard,* 565 Pa. at 109, 771 A.2d at 1242 (citations and quotations omitted).

¶ 25 What we must next determine is whether the injury for which Appellant seeks indemnification is within the purview of the subcontract. It is axiomatic that Goldsmith cannot be held responsible for injuries that occur beyond the scope of its subcontract. *See Leonard, supra.* Hence, we must construe the exculpatory indemnification clause contained in contract MV–1219 with the terms of the subcontract. Generally, a flow-through clause, which incorporates a contract by reference, cannot be applied where the documents contain conflicting provisions. *Ragan Enterprises, Inc. v. L & B Construction Co., Inc.,* 221 Ga.App. 543, 472 S.E.2d 88 (1996), *rev'd* on other grounds, *L & B Construction Co., Inc. v. Ragan Enterprises, Inc.,* 267 Ga. 809, 482 S.E.2d 279 (1997).

¶ 26 Appellant asserts that the subcontract includes an indemnification provision, which expressly obligates Goldsmith to indemnify Appellant for damages associated with any matter occurring at the location of the work. Paragraph 13 of the subcontract reads as follows (emphasis added):

[Goldsmith] hereby releases [Appellant] and owner from any and all claims and liability for loss, damage or injury to any property or for personal injury, including but not limited to any death, incurred by or **arising out of any matter occurring at [the] location of the Work,** or on any premises under [Appellant's] control, or elsewhere, in connection with the Work or otherwise, and further, [Goldsmith] agrees to indemnify

and to hold harmless the [Appellant] and owner and the respective officers, directors, partners, agents and employees of each and either of them from and against any claim, loss, damage, liability or expenses (including Liability under any Compensation laws) occurring to any property or for personal injury and/or death as any of same may result from or arise from the performance, lack of performance or improper performance of the Work whether such matter may arise or occur on the location of the Work, at any premises under the control of [Appellant], or elsewhere.

Subcontract Agreement Between Contractor and Subcontractor, ¶ 13.[5] This paragraph does not require Appellant to demonstrate Goldsmith's culpability as a prerequisite to indemnification. Rather, under the terms of this broad provision, Goldsmith stands in the shoes of Appellant and assumes all obligations for injuries that occur at its work site.

¶ 27 Goldsmith contracted with Appellant to perform electrical work at the Super Fresh location. The scope of the contract included providing electrical renovations for a relocated office. While Appellant was responsible for the demolition and remodeling, Goldsmith was responsible for, *inter alia,* disconnecting the electrical and communication cables from a deconstructed office and re-wiring the relocated office. The pipe that was allegedly involved in plaintiff's fall, which was located in the area of the deconstructed office, was an empty electrical conduit that did not require any electrical work by Goldsmith. After completing its ·work at the site of the deconstructed office, Goldsmith moved to the location of the

---

**5.** It is interesting to note that Goldsmith makes no mention of this provision of the subcontract in its brief, and therefore provides this Court with no explanation as to Goldsmith's understanding of this language.

relocated office to put the systems back online. Goldsmith did not remove the pipe or otherwise acknowledge the potential hazard.

¶ 28 Goldsmith contends that its contractual obligation to indemnify Appellant is limited to damages associated with the actual performance of the "electrical work" and urges us to adopt a narrow interpretation of its work. Although construction contracts commonly restrict liability to incidents that occur in the performance of the work, herein the language to which Goldsmith agreed is very broad. Paragraph 13 of the subcontract does not limit Goldsmith's liability to injuries arising within the scope of its performance of electrical work. Instead, liability is triggered merely by the locus of the injury. While it is true, as Goldsmith points out, that the trial court did not make a factual determination as to the actual cause of the injury, it remains undisputed that the incident occurred at the location where Goldsmith performed its work. A causal connection is not required to obligate Goldsmith to provide exculpatory indemnification under the terms of the incorporated indemnification provision. *See Woodburn, supra.* Since the incident occurred in the precise area where Goldsmith was performing its electrical work, we conclude the hazard and the resulting injury were within the purview of Goldsmith's obligations under the subcontract.[6]

¶ 29 Accordingly, pursuant to the indemnification provisions incorporated into and those specifically contained in the subcontract, Goldsmith is contractually obligated to indemnify Appellant fully for injuries occurring at the location of the work.

---

**6.** Although the parties ardently disputed responsibility for removing the pipe, Goldsmith ultimately agreed to disconnect it. However, the subsequent repair was not a factor in our determination. *See Duchess v. Langston Corp.,*

¶ 30 For all of the foregoing reasons, we affirm the trial court's order with respect to Appellant's obligation to indemnify Super Fresh under the terms of contract MV–1219. However, since we also conclude that Goldsmith is obligated to indemnify Appellant fully, we remand the matter for entry of an order consistent with this decision.

¶ 31 Order affirmed in part, reversed in part and remanded. Jurisdiction relinquished.

564 Pa. 529, 769 A.2d 1131 (2001) (subsequent repair is never relevant in determining negligence, but may demonstrate ownership, control, or feasibility of precautionary measures).