INTEGRATED PROJECT SERVICES,
Appellant

v.

HMS INTERIORS, INC., The PMA
Insurance Group and Joseph
Lloyd, Appellees.

Superior Court of Pennsylvania.

Argued July 25, 2007.

Filed Aug. 16, 2007.

Joel Gusky, Philadelphia, for appellant.

Kathleen D. Wilkinson, Philadelphia, for appellee.

BEFORE: LALLY–GREEN, KLEIN and BENDER, JJ.

OPINION BY BENDER, J.:

¶ 1 Integrated Project Services ("General Contractor") appeals from the June 13, 2005 order that granted the motion for judgment on the pleadings filed by HMS Interiors, Inc. ("Subcontractor"), on the basis that Subcontractor was not contractually obligated to indemnify General Contractor for liability incurred after Subcontractor's employee, Joseph Lloyd, sustained injuries on the construction work site owned by Wyeth–Ayerst Laboratories ("Owner"). The primary issue in this case is whether a pass-through indemnification clause in the subcontract serves to require Subcontractor to indemnify General Contractor for that portion of the damages attributable to General Contractor's negligence. Since the subcontract does not clearly and unequivocally demonstrate that Subcontractor intended to indemnify General Contractor for damages resulting from General Contractor's own negligence, we affirm.

¶ 2 On November 15, 1996, General Contractor and Owner entered into an agreement to provide renovations for Owner's building in Marietta, Pennsylvania (hereinafter, "prime contract").[1] The prime con-

---

1. The term "Work" is defined in the prime contract as "all labor necessary to design and produce the construction required by the Contract Documents, and all materials and equipment incorporated in such construction." Prime Contract, 11/15/96, at Article 1.

tract contains the following indemnification clause:

> [Paragraph 3.12.1] To the fullest extent permitted by law, the [General] **Contractor shall indemnify, defend and hold harmless the Owner,** its agents and employees from and against claims, damages, losses and expenses, including but not limited to attorney's fees, arising out of or resulting from the performance of the Work, provided that such claim, damage, loss or expense is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the Work itself) including loss of use resulting therefrom, **but only to the extent caused in whole or in part by negligent acts or omissions of the [General] Contractor or any Subcontractor, or anyone directly or indirectly employed by them or anyone for whose acts they may be liable for regardless whether or not such claim, damage, loss or expense is caused in part by a party indemnified hereunder.** Such obligation shall no[t] be construed to negate, abridge, or reduce other rights or obligations of indemnity which would otherwise exist as to a party or person described in Paragraph 3.12.1.

Prime Contract at ¶ 3.12.1 (emphasis added). In the next paragraph, the prime contract provides for the following waiver of workers' compensation immunity:

> [Paragraph 3.12.2] In claims against any person or entity indemnified under this paragraph 3.12 by an employee of the Contractor, a Subcontractor, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, **the indemnification obligation under this Paragraph 3.12 shall not be limited by a limitation on amount or type of damages, compensation or benefits payable by or for the [General] Contractor or a Subcontractor under workers' or workmen's compensation acts,** disability benefit acts or other employee benefit acts.

Prime Contract at ¶ 3.12.2 (emphasis added). Article 9 of the prime contract also requires General Contractor to maintain various forms of insurance, including workers' compensation insurance and comprehensive general public liability insurance.

¶ 3 Subsequently, on February 12, 1997, General Contractor entered into a contract with Subcontractor for performance of certain work encompassed by the prime contract (hereinafter the "subcontract"). The subcontract contains the following broad, all-encompassing provisions for incorporation of the prime contract by reference and for indemnification:

> 6. All work required to be performed hereunder by SUBCONTRACTOR shall be in strict accordance with the CONTRACT DOCUMENTS applicable to the work to be performed and materials, articles and/or equipment to be furnished hereunder. **SUBCONTRACTOR shall be bound to CONTRACTOR by the terms of this SUBCONTRACT and of the CONTRACT DOCUMENTS between the Owner and CONTRACTOR and shall assume toward CONTRACTOR all of the obligations and responsibilities with respect to the work to be performed hereunder by SUBCONTRACTOR which CONTRACTOR, by the CONTRACT DOCUMENTS, assumes toward the Owner.....**

> 7. **SUBCONTRACTOR assumes entire responsibility and liability for any and all claims and/or damages** of any nature or character whatsoever **for which CONTRACTOR shall be liable under the CONTRACT DOCUMENTS, or by operation of law, with respect to**

the work covered by this **SUBCON-TRACT and agrees to indemnify and save CONTRACTOR and Owner harmless from and against all claims,** demands, liabilities, interest, loss, damage, attorneys' fees, costs and expenses of whatsoever kind or nature, whether for property damage, **personal injuries (including death) to any and all persons, whether employees of CONTRACTOR or others, or otherwise,** caused or occasioned thereby, resulting therefrom, arising out of or therefrom, or occurring in connection therewith **to the same extent and obligation to which CONTRACTOR has assumed towards Owner under the CONTRACT DOCUMENTS,** or as imposed by law, **limited to the scope of the subject matter of this SUBCONTRACT.....** Subcontract, 2/12/97, at ¶¶ 6, 7. Other provisions of the subcontract include Subcontractor's agreement to maintain certain forms of insurance such as workers' compensation insurance and comprehensive general liability insurance. *Id.* at ¶ 8.

¶ 4 On January 22, 1998, Mr. Lloyd, Subcontractor's employee, was injured after falling off a roof while working at the construction site in Marietta, Pennsylvania.[2] Barred by the workers' compensation statute from suing his employer (Subcontractor), Mr. Lloyd filed a complaint against Owner and General Contractor on June 15, 1999, in which he sought damages for his injuries. Lloyd Complaint, 6/15/99, at ¶ 5. General Contractor attempted to join Subcontractor as an additional defendant in the underlying Lloyd action, and Subcontractor responded by filing preliminary objections to that effort. Due to General Contractor's failure to respond to Subcontractor's preliminary objections to the joinder complaint, Subcontractor's preliminary objections were sustained and Subcontractor was dismissed with prejudice. *See* Trial Court Opinion (T.C.O.), 7/2/01, at 2–3. Indeed, in this appeal General Contractor does not argue that Subcontractor's negligence contributed to Mr. Lloyd's injuries.[3]

¶ 5 On March 15, 2001, General Contractor filed a complaint against Subcontractor and Subcontractor's insurer, the PMA Insurance Group, in which it raised various claims for, *inter alia,* declaratory judgment, breach of contract, unjust enrichment, negligent misrepresentation, and breach of the duty of good faith and fair dealing. More specifically, with regard to issues in this appeal, Count I of General Contractor's complaint asserted a claim against Subcontractor only, seeking a declaratory judgment that Subcontractor was obligated to indemnify General Contractor in the underlying Lloyd action, pursuant to the above-noted clauses in the subcontract.[4,5]

---

2. As described in a memorandum opinion this Court issued in an appeal in the underlying Lloyd litigation, General Contractor's superintendent directed Subcontractor to remove debris from an ice-coated roof at the work site. As Subcontractor's employee, Mr. Lloyd, was removing debris from the roof into a dumpster below, he slipped on the ice, fell off of the roof, and sustained serious injuries. *See Lloyd v. Ayerst,* 817 A.2d 1191 (Pa.Super.2002) (unpublished memorandum).

3. Rather, as described in detail *infra,* General Contractor's sole argument is that the subcontract's incorporation and indemnification provisions require Subcontractor to indemnify General Contractor for its own negligence/liability in the Lloyd case.

4. Joseph Lloyd was included as a nominal defendant in the declaratory judgment action. 42 Pa.C.S. § 7540.

5. The other counts against Subcontractor, not at issue in this appeal, pertain to General Contractor's claim that Subcontractor failed to procure insurance naming General Contractor as an additional insured. PMA Insurance Group, Subcontractor's insurer, is not

¶ 6 On April 11, 2001, Subcontractor filed preliminary objections in which it asserted, *inter alia*, that Pennsylvania's Workers' Compensation Act (WCA)[6] provides that an employee may bring a cause of action against a third party, but the employer cannot be liable to the third party for damages, contribution, or indemnity "unless liability for such damages, contribution or indemnity shall be expressly provided for in a written contract entered into by the party alleged to be liable prior to the date of the occurrence which gave rise to the action." Subcontractor's Preliminary Objections, 4/11/01, at ¶ 9 (quoting 77 P.S. § 481(b)). Subcontractor further asserted that the indemnification language contained in Paragraph 7 of the subcontract was insufficient to require Subcontractor to indemnify General Contractor for General Contractor's own negligence in the underlying Lloyd case. *See id.* at ¶¶ 12, 13.

¶ 7 In the meantime, on April 27, 2001, a jury in the underlying Lloyd case returned a verdict in favor of Mr. Lloyd in the amount of $2,000,000, with 35% of that amount attributable to Lloyd's negligence, 55% attributable to General Contractor's negligence, and 10% attributable to Owner's negligence. *See* T.C.O., 7/2/01, at 3. Following the filing of post trial motions,

the trial court determined that General Contractor was immune from liability under the WCA as Lloyd's statutory employer, but that General Contractor waived its immunity with regard to any indemnification liability incurred pursuant to the terms of the prime contract. The case was appealed to our Court, the result of which is further described below.

¶ 8 Returning to the instant case, on July 2, 2001, the Honorable John W. Herron entered an Order with an accompanying opinion in which he denied Subcontractor's preliminary objections and directed Subcontractor to file an answer to General Contractor's complaint. This decision was based, in part, on Judge Herron's conclusion that Subcontractor was not immune from the subcontract's indemnification requirement by virtue of section 481(b) of the WCA.[7] *Id.* at 7. In particular, Judge Herron decided that the language in Paragraph 7 of the subcontract, standing alone, was insufficiently specific to establish that Subcontractor agreed to indemnify General Contractor for its own negligence, but that the incorporation clause found at Paragraph 6 functioned to put Subcontractor into the shoes of General Contractor, thereby holding Subcontractor to the indemnification provision found in Paragraph 3.12.2 in the prime contract, which

participating in the instant appeal. Also, we note that Subcontractor and counsel for PMA stipulated to amend Subcontractor's complaint to correct PMA's name to Pennsylvania Manufacturer's Association Insurance Company, although it appears that General Contractor has continued to refer to "PMA Insurance Group" in the present appeal.

6. 77 P.S. §§ 1–2708.

7. Section 481(b) of the WCA provides statutory immunity for an employer as follows:
 In the event injury or death to an employe is caused by a third party, then such employe, his legal representative, husband or wife, parents, dependents, next of kin, and

anyone otherwise entitled to receive damages by reason thereof, may bring their action at law against such third party, but the employer, his insurance carrier, their servants and agents, employes, representatives acting on their behalf or at their request shall not be liable to a third party for damages, contribution, or indemnity in any action at law, or otherwise, unless liability for such damages, contributions or indemnity shall be expressly provided for in a written contract entered into by the party alleged to be liable prior to the date of the occurrence which gave rise to the action.
 77 P.S. § 481(b).

provided a sufficiently specific waiver of workers' compensation immunity. *Id.* at 10–11. On August 24, 2001, Subcontractor filed an answer and new matter to General Contractor's complaint.

¶ 9 On January 15, 2002, the trial court in the instant case granted a stay pending final resolution of the appeal, noted above, in the underlying Lloyd case. On December 6, 2002, this Court rendered a decision in the Lloyd case, in which we concluded that General Contractor was Lloyd's statutory employer for purposes of WCA immunity. *Lloyd v. Ayerst,* Nos. 310 & 391 EDA 2002, unpublished memorandum at 4, 817 A.2d 1191 (Pa.Super. filed Dec. 6, 2002). However, we also determined that General Contractor did not waive its defense of immunity under the WCA. *Id.* at 5. Accordingly, we further determined that it was error for the trial court to include General Contractor on the verdict sheet. *Id.* We stated that the jury should have been permitted only to assess liability between Lloyd and Owner. *Id.* Therefore, we remanded for a new trial on the issue of Owner's liability and directed the trial court to exclude General Contractor from the verdict sheet on the basis of its unwaived statutory immunity under the WCA. *Id.* Finally, we deferred deciding the issue of Owner's request for indemnification from General Contractor under the terms of the prime contract until the jury in the new trial determined the question of liability between Owner and Lloyd in a new trial. *Id.* at 6.

¶ 10 Thus, a new trial in the underlying Lloyd case, with Owner as the defendant, was held from June 16, 2003, through June 20, 2003. This time, the jury awarded Mr. Lloyd $1,800,000 in damages, with 10% negligence attributable to Mr. Lloyd. The trial judge then heard argument on Owner's contractual indemnification claim against General Contractor. The trial judge concluded that Owner's negligence accounted for 20% of the verdict and General Contractor's negligence accounted for 80% of the verdict. Accordingly, General Contractor's share of the verdict was determined to be $1,400,000, which is the sum General Contractor is now seeking from Subcontractor in the instant declaratory judgment action for indemnification pursuant to the terms of the prime contract and subcontract.

¶ 11 Given the verdict of the jury in the retrial of the Lloyd case, the Honorable Gene D. Cohen lifted the stay in the instant case on September 5, 2003. On March 9, 2004, Subcontractor filed a Motion for Judgment on the Pleadings and/or Motion for Partial Summary Judgment to Plaintiff's (General Contractor's) Complaint. General Contractor filed a response to this motion on April 6, 2004.

¶ 12 After consideration of the motion and corresponding briefs of the parties, Judge Cohen denied Subcontractor's Motion for Judgment on the Pleadings and/or Motion for Partial Summary Judgment on October 21, 2004. In conjunction with this order, Judge Cohen filed a memorandum opinion in which he explained that both parties agreed that the subcontract incorporates by reference the prime contract. T.C.O., 10/21/04, at 2. However, Judge Cohen rejected Subcontractor's argument, given in support of its motion, that the indemnification clauses in each contract were in conflict and, therefore, certain supremacy clauses contained in the subcontract should prevail, resulting in no indemnification of General Contractor by Subcontractor. *Id.* After determining that the indemnification provisions in each contract were not in conflict, Judge Cohen relied on this Court's decision in *Bernotas v. Super Fresh Food Markets, Inc.,* 816 A.2d 225, 231 (Pa.Super.2002), to conclude that the "flow-through" or "conduit

clause" contained in Paragraph 7 of the subcontract,[8] which functioned to "require[ ] the subcontractor to stand in the shoes of the prime contractor with regards to the rights and obligations encompassed in the prime contract to the extent they arise within the purview of the subcontract," was enforceable. T.C.O., 10/21/04, at 3 (quoting *Bernotas*, 816 A.2d at 231). Thus, in reliance on this Court's decision in *Bernotas*, Judge Cohen stated "[s]ince there is no inherent problem with [General Contractor] attempting to pass on its liability to [Subcontractor] in this manner, the question is whether the terms of the Prime Contract's indemnification clause, as incorporated into the Sub–Contract's indemnification clause, are sufficiently clear to make [Subcontractor] liable for [General Contractor's] negligent acts...." *Id.* at 3–4. Judge Cohen turned to the indemnification provision in Paragraph 3.12.1 of the prime contract, and concluded that it was sufficiently clear to hold that Subcontractor was obligated to "indemnify and save [General Contractor] harmless from and against all claims, but only to the extent caused by the negligent acts or omissions of [General Contractor and Subcontractor]." *Id.* at 5 (relying on language in Paragraph 3.12.1 of the prime contract). As we shall explain below, subsequent to Judge Cohen's decision, our Supreme Court reversed our decision in *Bernotas* upon which Judge Cohen's decision was based and, essentially, concluded that there was an "inherent problem" with pass-through indemnification provisions such as the one in the instant case.

¶ 13 Additionally, Judge Cohen concluded that Subcontractor waived its immunity under the WCA. Specifically, Judge Cohen reiterated that the incorporation by reference provision in the subcontract was sufficient to put Subcontractor into the shoes of General Contractor with regard to General Contractor's express waiver of WCA immunity found in Paragraph 3.12.2 of the prime contract.

¶ 14 On December 22, 2004, our Supreme Court rendered its decision in an appeal in the *Bernotas* case, and reversed that part of this Court's decision that Judge Cohen relied upon, *i.e.*, regarding enforceability of pass-through indemnification provisions. *Bernotas v. Super Fresh Food Markets, Inc.*, 581 Pa. 12, 863 A.2d 478 (2004). Given this development in the case law, on January 13, 2005, Subcontractor filed a motion for reconsideration of Judge Cohen's decision denying their motion for judgment on the pleadings or partial summary judgment. By an order dated February 16, 2005, Judge Cohen granted reconsideration and vacated his October 21, 2004 order that had denied Subcontractor's motion for judgment on

---

8. For the convenience of the reader, we reproduce Paragraph 7 of the subcontract here:

7. SUBCONTRACTOR assumes entire responsibility and liability for any and all claims and/or damages of any nature or character whatsoever for which CONTRACTOR shall be liable under the CONTRACT DOCUMENTS, or by operation of law, with respect to the work covered by this SUBCONTRACT and agrees to indemnify and save CONTRACTOR and Owner harmless from and against all claims, demands, liabilities, interest, loss, damage, attorneys' fees, costs and expenses of whatsoever kind or nature, whether for property damage, personal injuries (including death) to any and all persons, whether employees of CONTRACTOR or others, or otherwise, caused or occasioned thereby, resulting therefrom, arising out of or therefrom, or occurring in connection therewith to the same extent and obligation to which CONTRACTOR has assumed towards Owner under the CONTRACT DOCUMENTS, or as imposed by law, limited to the scope of the subject matter of this SUBCONTRACT.....

Subcontract, 2/12/97, at ¶ 7.

the pleadings and/or partial summary judgment.

¶ 15 On June 13, 2005, the Honorable Howland W. Abramson, who presided over this case following Judge Cohen's retirement, entered an "Order and Opinion" granting Subcontractor's motion for judgment on the pleadings following Subcontractor's request for reconsideration in light of the Supreme Court's decision in *Bernotas*.[9] General Contractor filed a timely notice of appeal on July 8, 2005. By an order docketed on July 15, 2005, Judge Abramson directed General Contractor to file a concise statement of matters complained of on appeal pursuant to Pa.R.A.P.1925(b). General Contractor filed a timely Rule 1925(b) statement. Judge Abramson filed a statement on August 18, 2005, indicating that, for the reasons stated in his June 13, 2005 opinion, the issues General Contractor raised in its Rule 1925(b) statement were without merit.

¶ 16 On June 21, 2006, we quashed the appeal on the basis that Judge Abramson's order granting judgment on the pleadings dismissed only Count I of General Contractor's complaint, leaving the remaining counts against Subcontractor and PMA unresolved. *Integrated Prod. Servs., Inc. v. HMS Interiors, Inc., The PMA Ins. Group, and Joseph Lloyd*, No. 2175 EDA 2005, unpublished memorandum at 2–3, 905 A.2d 1054 (Pa.Super. filed June 21, 2006).

¶ 17 On March 8, 2007, upon return of the case to the trial court, the parties entered into a "Stipulation of Dismissal" that was approved by Judge Abramson, whereby the parties agreed that counts II through VII of General Contractor's complaint would be dismissed with prejudice.

The order approving the "Stipulation of Dismissal" also incorporated the court's June 13, 2005 order that granted Subcontractor's motion for judgment on the pleadings, which dismissed Count I of General Contractor's complaint. General Contractor again filed a timely notice of appeal on March 29, 2007. Again, Judge Abramson filed a statement referring this Court to his June 13, 2005 opinion that addresses the issues raised by General Contractor in this appeal.

¶ 18 General Contractor enumerates the following issues for our review, in the statement of questions involved portion of its brief:

1. Whether the "pass through" provisions of the subcontract between [General Contractor] and [Subcontractor] found at paragraphs 6 and 7 of the subcontract meet the standard for such provisions as recently articulated by the Pennsylvania Supreme Court in *Bernotas v. Super Fresh Food Markets*, 581 Pa. 12, 863 A.2d 478 (2004)....

2. Whether the terms of the indemnification obligations of the [prime] contract between [General Contractor] and [Owner] are applicable to the subcontract between [General Contractor] and [Subcontractor] because of the "pass through" provisions of the ... subcontract so that [Subcontractor] must indemnify [General Contractor] for its losses in the underlying Lloyd litigation....

3. Whether, in light of *Bernotas, supra*, and paragraphs 6 and 7 of the subcontract, [Subcontractor] waived its [WCA] immunity from suit, vis-à-vis [General Contactor]....

9. From this point on, unless otherwise noted, references to *"Bernotas"* are to the Supreme Court's decision in that case.

2. Whether the terms of the [prime] contract between [General Contractor] and [Owner] as they relate to [Subcontractor's] waiver of its [WCA] immunity are applicable to the subcontract ... because of the "pass through" provisions of the subcontract so that [Subcontractor] has no legal defenses to [General Contractor's] contractual indemnification claim. . . . .

General Contractor's brief at 3. Essentially, the issues presented require us to determine if the trial court committed an error of law by refusing to find the pass-through provisions in the subcontract (Paragraphs 6 and 7) effective to hold Subcontractor in the shoes of General Contractor with regard to General Contractor's obligations under Paragraphs 3.12.1 and 3.12.2 of the prime contract (*i.e.*, involving General Contractor's promise to hold Owner harmless for liability incurred due to both General Contractor's and Subcontractor's negligence, and General Contractor's waiver of WCA immunity).

 ¶ 19 Initially, we note the applicable scope and standard of review:

A motion for judgment on the pleadings should be granted only where the pleadings demonstrate that no genuine issue of fact exists, and the moving party is entitled to judgment as a matter of law. Pa.R.C.P. 1034[.] Thus, in reviewing a trial court's decision to grant judgment on the pleadings, the scope of review of the appellate court is plenary; the reviewing court must determine if the action of the trial court is based on a clear error of law or whether there were facts disclosed by the pleadings which should properly go to the jury. An appellate court must accept as true all well-pleaded facts of the party against whom the motion is made, while considering against him only those facts which he specifically admits. Neither party can be deemed to have admitted either conclusions of law or unjustified inferences. Moreover, in conducting its inquiry, the court should confine itself to the pleadings themselves and any documents or exhibits properly attached to them. It may not consider inadmissible evidence in determining a motion for judgment on the pleadings. Only where the moving party's case is clear and free from doubt such that a trial would prove fruitless will an appellate court affirm a motion for judgment on the pleadings.

*Southcentral Employment Corp. v. Birmingham Fire Ins. Co. of Pennsylvania*, 926 A.2d 977, 980 (Pa.Super.2007) (quoting *Consulting Eng'rs, Inc. v. Insurance Co. of N. Am.*, 710 A.2d 82, 83–84 (Pa.Super.1998) (citations and quotation marks omitted)). Additionally, "[t]he interpretation of a contract is a matter of law and, as such, we need not defer to the trial court's reading of the Agreement." *Welteroth v. Harvey*, 912 A.2d 863, 866 (Pa.Super.2006).

¶ 20 Resolution of the issues on appeal require a close examination of *Bernotas*, as the trial court relied on that decision to conclude, upon reconsideration of Subcontractor's motion for judgment on the pleadings, that the pass-through provisions in the subcontract were ineffective to require Subcontractor to indemnify General Contractor for its liability in the Lloyd case. In *Bernotas*, Barbara Bernotas, a customer at the Super Fresh Food Market, was injured when she fell through a hole at a construction site in the store. *Bernotas*, 863 A.2d at 479. The store had contracted with a general contractor, who hired a subcontractor to perform electrical work at the site in accordance with plans and specifications set forth in the general (or prime) contract between the general contractor and the store's parent company. *Id.* Ms. Bernotas sued the store, and the

store filed cross claims for contractual indemnification against the general contractor and the subcontractor. *Id.* The parties settled the case for $200,000, with each defendant deemed responsible for ⅓ of the amount. *Id.* The store then sought indemnification under the terms of the general contract, which required "[t]he Contractor ... [to] assume entire responsibility and liability for any and all damage or injury of any kind ... caused by ... the execution of the work provided for in this Contract ...," provided the store was not solely negligent. *Id.* (quoting from general contract). The issue became whether the general contractor was required to indemnify the store under the terms of the general contract and, in turn, whether the subcontractor was required to indemnify the general contractor under the terms of the subcontract. *Id.*

¶ 21 The trial court in *Bernotas* determined that the store was not solely negligent; therefore, the indemnification provisions in the general contract, requiring the general contractor to indemnify the store, were triggered. *Id.* at 480. Thus, the general contractor became responsible for ⅔ of the settlement award (its portion and the store's portion); however, the general contractor appealed, arguing that subcontractor was responsible for the entire amount of the settlement because of its agreement, through pass-through or incorporation clauses in the subcontract, to indemnify the general contractor. *Id.*

¶ 22 On appeal to our Court, we determined that the subcontractor was obligated to indemnify the general contractor and was, therefore, responsible for the entire settlement amount. *Bernotas,* 816 A.2d at 234. The parties agreed that the indemnification provisions in the general contract were sufficiently specific to indemnify the store unless it was solely negligent. *Bernotas,* 863 A.2d at 480. The issue in dispute was whether the terms of the subcontract, incorporating by reference the terms of the general contract, required the subcontractor to indemnify the general contractor for acts that were not solely the result of the negligence of either the general contractor or the store. *Id.* Our Court determined that the language of the pass-through provisions was sufficient.

¶ 23 In analyzing our Court's decision, the Supreme Court set forth the following clauses from the subcontract, which our Court had previously determined were sufficient to create "a conduit through which the obligations embodied in the prime contract flowed ... to the [subcontract] to the extent that the obligations were within the ambit of the subcontract." *Id.* (citing *Bernotas,* 816 A.2d at 231). These conduit provisions in the subcontract included the following:

- "[the prime] Contract Documents form a part of this Subcontract, and are as fully a part of this Subcontract as if attached to this agreement and as if herein set forth at length."

- "[subcontractor] agrees to fully perform and to assume all obligations and liabilities of [general contractor] under the General Contract for the work, or as may be imposed [thereafter] by law, including but not limited to all warranties and guaranties."

- "[subcontractor] hereby releases [general contractor and store] from any and all claims ... for personal injury ... arising out of any matter occurring at location of the Work ... and further, [subcontractor] agrees to indemnify and to hold harmless [general contractor and store] ... from and against any claim, loss, damage, liability or expense ... occurring to any property or for personal injury ... as ... may result from or arise from the performance, lack of performance or

improper performance of the Work whether such matter may arise or occur on the location of the Work...."

*Id.* (quoting provisions of subcontract). In contrast to our Court's prior determination in *Bernotas,* our Supreme Court concluded that these pass-through provisions were not enforceable against the subcontractor because they did not clearly and unequivocally evidence subcontractor's intent to indemnify the general contractor for the general contractor's *own negligence. Id.* at 481.

¶ 24 In reaching this conclusion, our Supreme Court engaged in a thorough examination of the enforceability of pass-through clauses, noting that various other jurisdictions upheld pass-through clauses that held a subcontractor to provisions in the prime contract relating to, for example, delay damages and arbitration. *See id.* (describing various cases). However, the Court went on to distinguish these cases from cases that struck-down pass-through provisions that purported to hold an indemnitor responsible for an indemnitee's *negligence.* The Court explained:

> Several courts have directly rejected the pass-through or implied indemnity theory in the context of indemnification for negligence clauses. The Supreme Court of California held that without specific and unambiguous language in the subcontract, a subcontractor was not obligated to indemnify the contractor against its own negligence, even when the subcontract provided the subcontractor was bound "in the same manner and to the same extent as [contractor] is bound to Owner under the General Contract" and the prime contract contained an indemnification from negligence provision regardless of who was responsible. *Goldman v. Ecco–Phoenix Electric Corp.,* 62 Cal.2d 40, 41 Cal.Rptr. 73, 396 P.2d 377 (1964). The court required an

express undertaking in the document to protect the indemnitee from its own negligence. *Id.,* [at 73, 396 P.2d] at 379. Applying *Goldman,* the Court of Appeals of Arizona rejected the argument that an indemnification clause in the prime contract required the subcontractor to indemnify the contractor for acts of the contractor's negligence even when the prime contract was incorporated by reference in the subcontract. *Allison Steel Manufacturing Co. v. Superior Court of Arizona,* 22 Ariz.App. 76, 523 P.2d 803 (1974). The court expressed support for the rule that a contract for indemnity will not be construed to cover the contractor's liability for its own negligence unless this intention is expressed in clear and unequivocal terms. *Id.,* at 806. The court noted the general contractor drafted the agreement and the terms of the agreement were not arrived at by negotiations between the parties, and nothing prevented the contractor from including a specific provision in the subcontract. *Id.,* at 807. Similarly, the prime contract in *General Electric v. Hatzel & Buehler, Inc.,* 19 A.D.2d 40, 240 N.Y.S.2d 636 (1963), included an indemnification provision for losses for personal injuries resulting from performance of the work. *Id.,* at 638. Despite finding the subcontract plainly indicated the subcontractor would comply with "all provisions, terms, specifications, and requirements" of the general contract, the court held the subcontractor did not undertake to assume the absolute liability imposed in the general contract because the indemnity clause in the subcontract was not broad enough to cover such liability. *Id.* The separate indemnification provision contained in the subcontract governed because it simply carved out a smaller portion of the large area of liability imposed by the prime contract. *Id.,* at 638–39.

Various jurisdictions consider clauses providing indemnification from a subcontractor for negligence not caused by the subcontractor a violation of public policy. *See Vey v. Port Authority of New York,* 79 A.D.2d 920, 434 N.Y.S.2d 412, 414 (1981) (subcontract evidenced no intent by parties to be bound by indemnification arising out of separate contract between different parties, but only against claims arising out of work covered by subcontract); *Ghilardi v. Natl. Riverside Co.,* [1995 WL 808924] 1995 Mass.Super. LEXIS 729 (1995) (indemnity provisions contained in construction contracts void when subcontractor is obligated to indemnify any party for injury not caused by the subcontractor); *IU North Am. v. The Gage Co.,* [2002 WL 1277327 at *5] 2002 U.S. Dist. LEXIS 10275 at *14 (E.D.Pa.2002) (applying Pennsylvania law narrowly construing indemnity provisions to negligence and strict liability, no presumption indemnitor intended to assume contractual liability of indemnitee unless subcontract expressly stipulates).

It is well-settled in Pennsylvania that provisions to indemnify for another party's negligence are to be narrowly construed, requiring a clear and unequivocal agreement before a party may transfer its liability to another party. *Ruzzi v. Butler Petroleum Co.,* 527 Pa. 1, 588 A.2d 1, 7 (1991); *Perry v. Payne,* 217 Pa. 252, 66 A. 553 (1907). Accordingly, indemnification provisions are given effect only when clearly and explicitly stated in the contract between two parties. *Greer v. City of Phila., et al.,* 568 Pa. 244, 795 A.2d 376, 380 (2002) ("[u]nless the language is clear and unambiguous . . . we must opt for the interpretation that does not shoulder [subcontractor] with the fiscal responsibility for [contractor's] and [owner's] negligence."). The Superior Court acknowledged the dearth of case law pertaining to its pass-through theory as applied to indemnification for negligent acts, but concluded pass-through provisions are an accepted means of transferring risk. However, the court did not cite cases recognizing pass-through indemnity for negligence via a general incorporation clause in a subcontract.

As the Third Circuit recently acknowledged, this Court has not addressed whether an indemnity provision in a subcontract extends to a contractor's liability to indemnify a third party, where the obligation is not expressed in clear and unequivocal terms. *Jacobs Constructors, Inc. v. NPS Energy Srvcs., Inc.,* 264 F.3d 365, 371 (3d Cir.2001). Applying substantive Pennsylvania law, the court reviewed the underlying policies of the *Perry–Ruzzi* rule and ultimately determined this Court would hold the *Perry–Ruzzi* doctrine applies to indemnity claims for losses contractually assumed by the indemnitee. *Id.,* at 371–72. Citing *Perry,*[10] the court noted, "[S]uch indemnification imposes an 'unusual' and

---

**10.** The *Perry* Court stated: "[A] contract of indemnity . . . should not be construed to indemnify against the negligence of the indemnitee, unless it is so expressed in unequivocal terms. The liability on such indemnity is so hazardous, and the character of the indemnity so unusual and extraordinary, that there can be no presumption that the indemnitor intended to assume the responsibility unless the contract puts it beyond doubt by express stipulation." *Perry,* 66 A. at 557.

Additionally, with regard to such provisions being deemed against public policy, the *Greer* Court relied on *Perry* to reiterate that "it would be 'contrary to experience and against reason' for a contractor to agree to indemnify another for the other's negligence, when such indemnification would subject it to 'uncertain and indefinite' liability." *Greer,* 568 Pa. 244, 795 A.2d 376, 379 (2002) (quoting *Perry,* 66 A. at 555).

'extraordinary' obligation in the same manner as indemnification for one's own negligence." *Id.*, at 372. Although the aforementioned authorities confirm pass-through clauses may be generally enforceable, as noted by the Third Circuit, upholding these provisions strictly in the case of indemnification clashes with our rule of law requiring indemnification language to be unequivocally stated in the contract.

*Bernotas,* 863 A.2d at 481–483.

¶ 25 The *Bernotas* Court, in reversing our Court's decision to uphold the pass-through provision in that case, applied the above principles to conclude that the terms of the subcontract, set forth *supra,* did not "clearly express the parties' intentions regarding the issue of indemnification." *Id.* at 483. The Court stated:

We therefore hold, unless expressly stated, pass through indemnification clauses violate the long standing policy underlying the rule narrowly construing indemnification provisions. When the provision sought to be "passed through" involves indemnification for acts of another party's negligence, the theory will not be applied, unless the contract language is clear and specific. Sound public policy requires an unequivocally stated intention to be included in the subcontract for this particular type of provision to pass through from the general contract. The general language of a standard incorporation clause cannot trump the specific language of the subcontract, when the former supports indemnification for negligent acts but the latter is ambiguous regarding the circumstances under which indemnification will occur.

*Id.* at 484.

■ ¶ 26 General Contractor, in the instant case, argues that the pass-through provisions in the Subcontract are distinguishable from those in *Bernotas* because, here, the subcontract indicated that Subcontractor "shall be bound" to General Contractor by the terms of the subcontract and the prime contract. General Contractor's brief at 8–15 (citing phrasing in Paragraph 6 of subcontract). We are not persuaded that the presence of the phrase "shall be bound" in the Subcontract serves to unequivocally evidence Subcontractor's intention to indemnify General Contractor for General Contractor's own negligence, as is required by the Supreme Court's *Bernotas* decision. Rather, we conclude that Judge Abramson did not err by refusing to enforce the pass-through provisions of the Subcontract to require indemnification by Subcontractor to General Contractor for liability incurred by General Contractor for its own negligence. Judge Abramson correctly applied the above holding in *Bernotas* to find that the Subcontract "does not contain an unequivocally stated intention to have [Subcontractor] indemnify [General Contractor] for [General Contractor's] own negligence; instead of being clear and specific, the Sub–Contract is, at best, ambiguous on the issue." T.C.O., 6/13/05, at 4. We agree that the plain language of Paragraph 6 and Paragraph 7 does not clearly and unequivocally evidence Subcontractor's intent to take on liability for General Contractor's own negligence, and those provisions are, therefore, unenforceable for that purpose. Accordingly, the first issue raised by General Contractor in this appeal is without merit and, consequently, the second issue, which is premised on General Contractor's contention that the pass-through indemnification provision is enforceable, is likewise without merit.

■ ¶ 27 In its final two issues, General Contractor contends that Judge Abramson erred by finding that the pass-through provisions of the subcontract did not have

the effect of waiving Subcontractor's WCA immunity. As described in the above procedural history, Judge Herron previously determined, on July 2, 2001, that the pass-through provision of Paragraph 7 of the subcontract was sufficient to bind Subcontractor to the waiver of WCA immunity found in Paragraph 3.12.2 of the prime contract. However, Judge Abramson later determined that, based on the specificity requirements of our Supreme Court's decision in *Bernotas,* which Judge Herron did not have the benefit of at the time he made his decision, and this Court's decision in *Bester v. Essex Crane Rental Corp.,* 422 Pa.Super. 178, 619 A.2d 304 (1993) (*en banc* ), the pass-through language was in fact "not specific enough to create a waiver by [Subcontractor] of its own WCA immunity vis-à-vis [General Contractor]." T.C.O., 6/13/05, at 6. We agree with Judge Abramson's interpretation and application of *Bernotas* and *Bester,* and therefore conclude that he did not commit an error of law.

¶ 28 Specifically, the *Bester* case involved injury to a construction company's employee resulting from the negligence of a company that leased construction equipment to the construction company. Essentially, the injured employee sued the leasing company and the leasing company sought to join the construction company, which was the injured employee's employer, on the basis of the following indemnification clause in the lease agreement:

The Lessee ... shall defend, indemnify and hold forever harmless Lessor ... against all loss, negligence, damage, expense, penalty, legal fees and costs, arising from any action on account of personal injury or damage to property occasioned by the operation, maintenance, handling, storage, erection, dismantling or transportation of any Equipment while in your possession. Lessor shall not be liable in any event for any loss, delay or damage of any kind of character resulting from defects in or inefficiency of the Equipment hereby leased or accidental breakage thereof....

*Bester,* 619 A.2d at 306 (quoting from lease agreement). Turning to section 481(b) of the WCA (set forth in full herein at footnote 7, *supra* ), we stated that:

Since the injured party, Bester, was an employee of [the construction company], under the terms of the Workmen's Compensation Act, any indemnity in favor of [the leasing company] would have to be expressly provided for in a written contract. 77 P.S. § 481(b). Under this section a third party may not seek contribution or indemnity from the employer, even though the employer's own negligence may have been the primary cause of the employee's injury, *see Tsarnas v. Jones & Laughlin Steel Corporation,* 488 Pa. 513, 518, 412 A.2d 1094, 1096 (1980), absent an express provision for indemnity in a written contract.

*Bester,* 619 A.2d at 306–307 (footnote omitted). "Case law has established that the indemnity provision in the Workmen's Compensation Act must be construed strictly, and general indemnity language such as 'any or all' or 'any nature whatsoever' is insufficient." *Id.* at 307. We noted that "[a] court will not materially rewrite the contract of the parties and insert terms which are not there in the absence of an explicit expression to waive the protection afforded by the Workmen's Compensation Act." *Id.* Additionally, we agreed that "if the indemnification agreement is ***clear and includes indemnification in the event of either the indemnitee's or the employer's own negligence,*** its enforceability does not require that the employer, in addition, expressly and *in haec verba* waive the immunity provided by

[section 481(b) ].'' *Id.* (emphasis added). However, ''[t]he intent to indemnify against claims by employees of the alleged indemnitor, however, must clearly appear from the terms of the agreement.'' *Id.* In sum, we crafted the following holding:

> [I]n order for an employer to be held liable in indemnification for injuries to its own employees caused by the negligence of the indemnitee there must be an express provision for this contingency in the indemnification clause. The absence of a provision in the hold-harmless clause that lessee [*i.e.*, the construction company] would indemnify lessor [the equipment leasing company] against the negligence of lessor in a claim by lessee's employee requires the conclusion that the clause does not meet the requirements of the Workmen's Compensation Act concerning express waiver, 77 P.S. § 481(b).''
>
> In order to avoid the ambiguities which grow out of the use of general language, ***contracting parties must specifically use language which demonstrates that a named employer agrees to indemnify a named third party from liability for acts of that third party's own negligence which result in harm to the employees of the named employer. Absent this level of specificity in the language employed in the contract of indemnification, the Workmen's Compensation Act precludes any liability on the part of the employer.***

*Id.* at 308–309 (footnote omitted, emphasis added).

¶ 29 Judge Abramson did not commit an error of law by relying on *Bester* and *Bernotas* to conclude that the pass-through provisions of the subcontract do not contain an express waiver of Subcontractor's WCA immunity. T.C.O., 6/13/05, at 4–5. The subcontract does not contain specific language demonstrating that Subcontractor agreed to indemnify General Contractor from liability for General Contractor's own negligence that resulted in harm to Mr. Lloyd, Subcontractor's employee. In turn, given this lack of specificity in the subcontract, Subcontractor cannot be bound to the waiver of WCA immunity provided in the prime contract at Paragraph 3.12.2.

¶ 30 Moreover, we are not persuaded by General Contractor's reliance on *Hackman v. Moyer Packing,* 423 Pa.Super. 378, 621 A.2d 166 (1993). In that case, an employee of Currie Cleaning Service sued a customer, Moyer Packing Company, alleging that she had fallen while working for her employer Currie at Moyer's premises. *Hackman,* 621 A.2d at 167. Moyer joined Currie as an additional defendant, claiming that Currie had agreed to indemnify it for such claims. *Id.* at 167–68. In reliance on the law provided in *Bester,* the *Hackman* court concluded that the indemnification agreement in that case was specific enough and effective to provide that Currie would indemnify its customer, Moyer.

¶ 31 In stark contrast to the ambiguous terms in the subcontract in the instant case, the indemnification clause between the indemnitor (Currie) and the indemnitee (Moyer) provided as follows:

> [Currie] . . . agrees to indemnify, save and hold harmless Moyer Packing Company, its subsidiaries, affiliates, their directors, officers, agents, workmen, servants or employees, against any and all claim or claims brought by the agents, workmen, servants or employees of [Currie] for any alleged negligence or condition, caused or created, [in] whole or in part, by Moyer Packing Company.

*Hackman,* 621 A.2d at 167 (citing contract in that case). The *Hackman* Court concluded:

> By this language Currie specifically agreed to indemnify Moyer for liability arising from harm suffered by Currie's

employees while working on Moyer's premises, even though Moyer may have been negligent in causing or contributing to the employees' injuries. As such, the requirements for waiver under the Workmen's Compensation Act have been met. The trial court did not err in concluding that the indemnity agreement was enforceable against Currie. *Id.* at 168. The same cannot be said for the language in Paragraphs 6 and 7 of the subcontract in the instant case, which does not specifically provide that Subcontractor agrees to indemnify General Contractor for liability from harm suffered by Subcontractor's employees. Accordingly, General Contractor's reliance on *Hackman* is misguided.

¶ 32 For the foregoing reasons, we affirm the June 13, 2005 order that granted Subcontractor's (*i.e.,* HMS Interior, Inc.'s) motion for judgment on the pleadings.

¶ 33 Order affirmed.